## COLVIN v. PHILLIPS.

1. Section 131 of the Code of Procedure, declaring that no acknowledgment shall be sufficient to revive a debt unless it be in writing, &c., does not apply to a judgment obtained in 1861; for in such case the right of action accrued before the code was enacted, notwithstanding the change thereby effected in the mode of renewing a judgment, and therefore such judgment is specially excepted from the provisions of this section.

2. The proviso to section 400 of the Code, being an exception engrafted on a general rule, does not render testimony inadmissible unless it falls within the express terms of the proviso.

3. In action against the administrator of a deceased judgment debtor prosecuted by the assignee of the judgment, the plaintiff may testify to a conversation between his assignor, then the owner of the judgment, and the judgment debtor, now deceased.

4. The revival of the execution by the original plaintiff, his payment of the costs, and his assignment of the judgment were all *ex parte* acts, and could not affect the presumption of payment arising from lapse of time.

5. A naked admission of a subsisting legal obligation is sufficient to rebut the presumption of payment up to that time, if made before the presumption has become complete. From such admission the law implies a new promise, which alone constitutes the cause of action.

6. In action instituted in 1885, to revive a judgment obtained in 1861, inquiries made by the debtor (now deceased) to the creditor in 1870, as to what sum he would take for this judgment, are not such an acknowledgment as would defeat the presumption of payment.

Before HUDSON, J., Chester, March, 1886.

The opinion sufficiently states the case.

*Mr. W. A. Sanders,* for appellant.

*Mr. Giles J. Patterson,* contra.

July 12, 1886.   The opinion of the court was delivered by

MR. JUSTICE McIVER. This was a summons to revive a judgment and renew an execution, issued June 29, 1885, against the administrator of the defendant. It appears that on September 30, 1861, one Nicholas Colvin recovered judgment against the defendant Phillips for eight hundred and fifty three 41-100 dollars, and on October 1, 1861, the first execution issued thereon was lodged in the sheriff's office. On March 3, 1866, a second execution was issued and lodged in the sheriff's office, and on February 7, 1870, the plaintiff, Nicholas Colvin, paid to the sheriff the costs on said judgment. The administrator of Phillips showed for cause why the execution should not be renewed, the presumption of payment arising from lapse of time. To rebut this presumption the present plaintiff, to whom the judgment and execution had been assigned, on January 22, 1884, by his father, Nicholas Colvin, offered himself as a witness to prove a conversation between his father, who died in April, 1884, and Phillips.

This testimony was duly objected to as incompetent both under section 131 and section 400 of the Code of Procedure. The objection was overruled by the referee; to whom it had been referred to take the testimony in the case, and the present plaintiff testified as follows: "I am the owner of the judgment and execution in this case. No part thereof has ever been paid to me, and no part thereof was ever paid to Nicholas Colvin, as far as I know. A short time before Phillips died, in 1870 or 1871, he came to the field where my father, Nicholas Colvin, and I were at work; they had a conversation in regard to this judgment. Phillips asked my father what he would take for the judgment and execution he held against him (Phillips). Father told him he would take the principal. After talking some time he told my father he could sell his place for a thousand dollars. Father then told him to bring him $500 and he would give up all claims he had against him. He told my father he would see about it, and came back in three days, and said he could not get but $500 in cash for the place. He asked my father if he could not let him (Phillips) take the $500 cash and my father wait for the other $500. Phillips did not sell the place, and there was no settlement between him and father." It appeared that no one else was present at the conversation in the field except one E. C.

Fant, the nephew of the present plaintiff, who was then a boy about eleven years of age, and who, upon being examined, testified that he remembered Mr. Phillips coming into the field, but paid no attention to the conversation. Whether there was anyone else present at the conversation three days afterwards, does not appear.

The case was heard by his honor, Judge Hudson, who held: 1st. That the evidence above recited "under an equitable application of the provisions of section 131 of the Code" was not admissible. 2nd. That even if admissible, it was not sufficient to rebut the presumption of payment arising from the lapse of time; and, therefore, he refused the motion to revive the judgment and renew the execution.

The plaintiff appeals upon several grounds, raising the following questions: 1st. Whether the evidence offered as to the alleged acknowledgments made by Phillips in 1870 or 1871, not being in writing was inadmissible under the provisions of section 131 of the Code. 2nd. Whether such evidence, if admissible, was sufficient to rebut the presumption of payment arising from lapse of time. 3rd. Whether such evidence, coupled with the further facts of the renewal of the execution in March, 1866, and the payment of the costs of the case by the original plaintiff in February, 1870, together with the assignment of the judgment to the present plaintiff in January, 1884, were not sufficient to rebut the presumption of payment. The defendant, in further support of the ruling below, also contends that the testimony of Nicholas J. Colvin was incompetent under section 400 of the Code of Procedure.

We propose to consider, in the outset, the questions as to the competency of the testimony of Nicholas J. Colvin; for if that testimony was inadmissible, it is quite clear that there is nothing to rebut the presumption of payment arising from the lapse of time. 1st. Was this testimony incompetent under section 131 of the Code, which reads as follows: "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby," &c. Now, if that section applies to the

present case, it is quite plain that the testimony in question, not being in writing, would be incompetent.

But does it apply? By its express terms it applies only to cases referred to in that "title" of the code in which the section is found; which is denominated, "time of commencing civil actions," but by its initial section (93) its operation does not extend to *all* civil actions, for in that section it is expressly declared: "The provisions of this title shall not extend to actions already commenced, or to cases where the right of action has already accrued; but the statutes then in force shall be applicable to such cases; according to the subject of the action and without regard to the form." It seems to us, therefore, that section 131, which contains one of the "provisions of this title," cannot be applied to any case where the right of action had accrued at the time of the adoption of the Code of Procedure, March 1, 1870. Now, as it is quite clear that in the case now under consideration, the "right of action"—whether by *scire facias* to revive the judgment, or by action of debt on the judgment—had accrued prior to the adoption of the code; we do not see how the provisions of section 131 can be applied in the face of this prohibition to the present case.

It is quite true that the right to institute *the particular mode of procedure* adopted in the present case, did not accrue, because it did not exist prior to the adoption of the code. But that is a mere change of a remedy from the old proceeding by *scire facias* to the present proceeding by summons, and does not affect "the right of action;" but only substitutes a new mode of enforcing such right. We think, therefore, that the Circuit Judge erred in holding the testimony incompetent under the provisions of section 131 of the Code.

2d. Was the testimony incompetent under section 400 of the Code? The general rule is that interest does not disqualify, and hence to render any testimony incompetent under the provisions of that section, it is necessary to bring such testimony under the *express terms* of some one of the exceptions to such general rule, mentioned in the proviso. *Guery* v. *Kinsler*, 3 *S. C.*, 423; *Cantey* v. *Whitaker*, 17 *Id.*, 527. Now, in this case the witness whose testimony was objected to, though a party to the action,

and though testifying as to a conversation of a deceased person; in a proceeding against his administrator, was not testifying "in regard to any transaction or communication *between such witness and a person at the time of such examination deceased,*" &c. On the contrary, the transaction or communication to which he was testifying was between Nicholas Colvin, the father of the witness, and the deceased, Phillips. For all that appears, the witness, at the time of the conversation, was like any other disinterested by-stander, testifying as to a conversation between the two original parties to the judgment, both of whom are now dead. It is clear, therefore, that the testimony objected to cannot be brought within the express terms of the exception relied upon; as has been frequently held by this court. *Roe* v. *Harrison*, 9 *S. C.*, 279; *Hughey* v. *Eichelberger*, 11 *Id.*, 36; *McLaurin* v. *Wilson*, 16 *Id.*, 402.

The testimony objected to not being incompetent upon either of the grounds taken; our next inquiry is whether it was sufficient, either alone or in connection with the other facts relied on, to rebut the presumption of payment arising from lapse of time. To determine this we will consider the second and third questions above stated, as presented by the grounds of appeal, together. First, then, as to the effect of a lodgment of a renewal execution in March, 1866, the payment of the costs by the original plaintiff in February, 1870, and the assignment of the judgment to the present plaintiff in 1884. These purely *ex parte* acts, not shown to have been known to the defendant in the judgment, or to his administrator, cannot, surely, have any effect whatever in rebutting the presumption of payment arising from lapse of time (*Dillard* v. *Brian*, 5 *Rich.*, 501; *Tobin* v. *Myers*, 18 *S. C.*, 324); and we do not see that they can lend any additional weight to the testimony of Nicholas J. Colvin as to the alleged admissions or acknowledgments of Phillips.

Inasmuch as the cases just cited establish the proposition that the twenty years begin to run when the judgment is entered up, and not when the last renewal execution is tested or loses its active energy, unless such renewal is upon notice to the defendant (*McNair* v. *Ingraham*, 21 *S. C.*, 70); and inasmuch as the judgment was in this case originally entered in September, 1861,

it is quite clear that the presumption of payment had arisen in September, 1881, several years before the present proceeding was commenced, unless the testimony of Nicholas J. Colvin was sufficient to rebut such presumption. It will be observed that the conversations (for there seems to have been two—one in the field, and the other three days afterwards) occurred before the twenty years had run out, and therefore before the presumption of payment had arisen.

It may be, therefore, that this case does not fall within the rule laid down in *Boyce* v. *Lake*, 17 *S. C.*, 481, and *Stover* v. *Duren*, 3 *Strob.*, 448; though it does seem, from the first ground of appeal in the last named case, that there was testimony of an admission made by the defendant that the debt was unpaid, before the twenty years had run out, but no notice of such testimony seems to have been taken, either in the Circuit Judge's report, or in the opinion of the Court of Appeals. While, therefore, it is quite clear that, in the conversations testified to by Nicholas J. Colvin, there was no such admission of a subsisting legal obligation, unaccompanied by any expression or conduct indicating an unwillingness to pay, as would, under the rule declared in those cases, be sufficient to rebut the presumption of payment, if such conversation had taken place after the twenty years had run out, and after the presumption had arisen; yet as these conversations took place before, it is necessary for us to consider their effect in that aspect of the case.

In considering the effect of admissions relied upon to rebut the presumption of payment arising from the lapse of time, the same principles are applicable which apply when admissions or subsequent promises, either express or implied, are relied upon to take a case out of the operation of the statute of limitations. There the rule is that, while a debt already barred by the statute cannot be revived except by an express promise to pay it, or by such an unequivocal admission that it is still due and unpaid, unaccompanied by any expression, declaration, or qualification, indicative of an intention not to pay, from which the law would imply a promise to pay, yet that before the debt is barred a naked admission of the subsisting legal obligation is sufficient. *Young* v. *Monpoey*, 2 *Bail.*, 278. The very satisfactory reason given

for this distinction in that case is, that in the one case there is no longer any *subsisting legal obligation ;* while in the other there is such an obligation ; hence, in the former case there must be either an express promise to pay the debt, or what is equivalent to it, while in the latter a mere acknowledgment of the *subsisting legal obligation* will, as matter of law, imply a promise to perform such obligation.

But as it is now settled that in either case the subsequent promise or acknowledgment, and not the original note, constitutes the cause of action (*Smith* v. *Caldwell,* 15 *Rich.,* 365, and *Walters* v. *Kraft,* 23 *S. C.,* 578), the practical inquiry in all such cases is, whether the subsequent promise or acknowledgment is sufficient to constitute a cause of action. The inquiry then is, whether the acknowledgment or admissions, as they are called, of Phillips are sufficient to constitute a cause of action. There was no express admission or acknowledgment of any subsisting legal obligation, and certainly no promise to pay anything. In the conversation in the field what Phillips first said amounted to nothing more than an inquiry as to what Colvin would take for the judgment, in general terms, and even when told that he could have the judgment for $500, he did not agree to give that sum, or even intimate that he would do so. On the contrary, his only reply was, "he would see about it." Then when he returned, three days afterwards, he only inquired whether Colvin would take a certain sum and wait for it, to which, so far as the testimony discloses, there was no reply.

It seems to us that it would be difficult to construe this language as even implying an admission of any subsisting legal obligation. He certainly did not say so, and with equal certainty he made no offer to pay anything. This he seemed carefully to avoid, and to confine himself entirely to a mere inquiry as to what Colvin would take for the judgment. It may well happen that a person having a note out against him, or a judgment standing open against him, the validity of which he does not acknowledge, might for the sole purpose of avoiding expense and litigation, institute inquiries, or even negotiations, in regard to such claims, without acknowledging their validity or even impliedly admitting his obligation to pay them; and this is all that Phillips

seems to have done. When to this is added the further facts, appearing in the record, that though Phillips appears to have had property sufficient to pay a large portion of the judgment, no steps seem to have been taken towards enforcing it until some fourteen or fifteen years afterwards, after the death of Phillips, we cannot regard the testimony relied upon as sufficient to rebut the presumption of payment arising from the lapse of time.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.